All right. The parties are ready to proceed. You may do so. Good morning, Your Honor, and may it please the Court. I'm Peter Fredman, on counsel for Plaintiff Appellants Gene Shrem and Marnie Fisher. I'd like to reserve about five minutes for rebuttal. I'm going to highlight a couple key points, and absent questions from the Court, reserve the balance of my time. The first point I want to highlight is that Southwest promises reusable funds to its customers in order to gain competitive advantage. Southwest promises that a customer can buy a non-refundable ticket, cancel it, and use the money paid for the ticket as credit towards the future purchase of travel on Southwest. And I don't think that's seriously disputed in the supplemental authority that Southwest submitted a couple weeks ago, Robinson v. American Airlines and Stewart v. Southwest. It states that there is an unambiguous reusable funds agreement that calls for a 12-month eligibility period, 12 months in which the customer can use the reusable funds for the purchase of travel on Southwest. This case is about an exception to that policy that is unexpected and not part of the Southwest agreement with its customers. Let me ask you, because you contend that Southwest failed to provide conspicuous notice of the earlier expiration date, but isn't that expiration date clearly noted on the face of the ticket right next to the confirmation number? There is an expiration. There is a term expiration, but the meaning of that term isn't available to the customer at that point. What expiration date? And there's a date. Why would that mean the date the ticket expires? But does that mean that it cancels the reusable funds agreement on that date? There's nothing to say that. That's not conspicuous. It's true that you have to educate the- It should say something like what Southwest says now, which is, to ensure your- I'm sorry. New reservations inherit the earliest expiration date from any funds applied from the old ticket. Therefore, the expiration date of our new reservation and all associated funds may be less than 12 months or something like that. So the customer goes in there with an expectation that they have a 12-month reusable fund period from the date of the purchase of the ticket. It's true that when they combine travel funds, the expiration date will change. And if they are very careful, they may notice that there's an expiration date that is less than 12 months. But they don't know what that means. They have no way of knowing what that means, certainly not on the face of the ticket. There's no explanation of what the expiration date means. They could know if they read the regulations. But let me ask sort of a related question. The only claim you're asserting now is a breach of contract claim, right? Yes, Your Honor. Is that right? All right. And how did Southwest breach the contract? But by not honoring a 12-month period? Exactly. But the ticket and the contract of carriage and all the incorporated terms doesn't say it's good for 12 months, does it? That's not the contract. The ticket is silent. The ticket itself is silent on the 12-month agreement. Well, not by incorporation. Not by the incorporated terms, it's not silent. The incorporated terms don't say anything about 12 months either. But of course, the customer hasn't read the contract of carriage. In order to understand. Well, no, but the contract of carriage is part of the contract, isn't it? It's part of the contract. All right. So and under the contract of carriage, isn't it clear that if you read the fine print that the expiration date of the refund or the reuse is less than 12 months? If you read the 41-page contract of carriage and you understand it, and you look through three different clauses, yes, you can determine that the expiration date is the, the reusable funds terminate early under certain situations. So that's what the contract is. So what are you saying now? The contract shouldn't be construed to mean what it says? Is that what you're claiming belongs to? Well, under the rules of contract construction established by the ADA, if there is a term. Wait a minute. Why do you call that a rule of the construction of a contract? Well, because that's what they. Which rule are you talking about? I am talking about, it starts with what is now 49 USC 41-707 that says airlines may incorporate, by reference, other terms into their ticketing contracts to the extent the Secretary of Transportation provides. And then there's a regulatory scheme that's developed at 14 CFR 253.1. And then there's also some rulemaking commentary that describes the intentions behind that regulatory scheme. And those materials are. That's a regulatory scheme. That's not a part of the contract, is it? It's, there's a separate issue of whether that regulatory contract or not. But our primary claim. Voluntarily or involuntarily, how is it incorporated? Do you have a case that says these regulations become a part of the contract or something like that? I haven't seen a case like that. Well, there's the Kleiner case, which is against Southwest. In which the sort of, the introduction to the contract of clergy says this contract is subject to the regulations. And Kleiner found that that thereby incorporated the regulations, contractualized the regulations. And Southwest's position is that they've changed their contract of carriage, so it doesn't make that mistake. Now, our primary position is not that the regulations are contractualized, although we do contend that they are. Our primary position is that the ADA regulations that I've described are not regulations in the sense that if you violate them, the regulator comes down on you. They are intended to be and therefore are rules of contract constructions that to set the standard, altering common law rules is applicable for contract law with respect to airline ticket contracts. And the enforcement mechanism, with the enforcement mechanism. There's a case that says these regulations are, are what? Part of the rules you have to look at in interpreting the contract, right? There's a couple cases. Price and Ron apply the regulations as they are intended to be applied as the rules of contract. Which case? Price. Price. And Ron. All right. OK. Let me ask you, because I just, I asked you about the expiration date. But there's an explanation regarding the expiration date on the ticket. It's like on page three or four of the ticket. There is no explanation of the expiration date on the ticket. At the very bottom of the ticket, there's a statement that says all travel. In a big paragraph, it says all travel must be completed by the expiration date. But it doesn't say that funds are forfeited. Elsewhere in the paragraph, all travel involving funds from this confirmation number must be completed by the expiration date. Unused travel funds may only be applied towards the purchase of future travel for the individual named on the ticket. Yes. Now that's not, that's not conspicuous written disclosure that you're going to forfeit unused travel funds if you don't use the. But if you go to the website regarding reusable funds, it also says if you cancel your flight, 100 percent of your ticket value can be applied to future travel for up to 12 months. And then it says on cancellations, 100 percent of the ticket value may be applied to future travel to be completed for up to 12 months or by your ticket expiration date, whichever is comes first. Right. And again, that's, they say the first thing, without the expiration date clause, they say it in the fare box. And then there's a tiny little footnote. It built into a paragraph. I'm seeing it right here. Right. So that's not conspicuous written notice. It's the opposite of conspicuous written notice. It's a hidden limitation on the right to use the reusable funds. But then you have the expiration date on the ticket. And then you have, I think it's one or two pages here later that explains that the funds from the ticket expire on the expiration date. So I don't believe what's on the ticket. It says the funds expire on the expiration date. Certainly not in clear and conspicuous language. Well, I don't believe it says that at all. What specific provision of the contract do you assert that Southwest breached? The reusable funds agreement. But can you read the provision, you know, and give a citation where it can be found? Which provision? I want to know. In the contract. In the contract of carriage? Yes. No, our position is that the contract, they cannot apply this hidden fine print exception in the contract of carriage under the ADA rules governing construction of such contracts. But these regulations aren't written into the contract anywhere. So I'm just curious to see if you can point to any actual provision in the contract to support your breach of contract claim. My understanding is that this would be your fallback argument that it was contractualized? I do believe it was contractualized. There is, in the contract of carriage itself, it says this contract of carriage is subject to the regulations. And there's many, we believe that that does contractualize the regulations. And importantly, it says. You read subject to as being the equivalent of incorporated into the contract? Is that what you said? Yes, and also it says to the extent of any conflict between the contract of carriage and the regulations, the contract, the regulations prevail. So to me, that's very clear incorporation language, at least in the event of a conflict. It seems ironic to me that the application of these regulations, which on their face appear to me to be designed to be the rules of construction for the incorporation by reference of terms into a ticketing contract, do not themselves apply directly as a matter of law. But we do, as a secondary position, believe that they are contractualized by the preamble or the statements at the beginning of the contracts of carriage itself. Do you want to reserve the balance of your time? Yes, I'll reserve. Thank you. Thank you. Thank you. May it please the court, Rich Phillips here on behalf of Southwest Airlines. And I want to start, I think, where the court, I think, went right off the bat, which makes the most sense, which is the ticket itself, which is the idea that regardless of all the preemption and the private right of action arguments that are out there, even if you look only at the documents that the plaintiffs want you to look at for their sort of manufactured reusable funds agreement, it's clear on the face of the ticket what the contract is. I think it's interesting that he, counsel, would like to avoid this language that says all travel involving funds from this confirmation number must be completed by the expiration date. What's the ER site on that? That's 51, Your Honor. By saying that it's at the bottom of the ticket. And that's like on page three? That's the second page of the ticket. Interestingly, in their brief on page 14, they say that an example of conspicuous language is the 10-minute rule, which is if you don't check in by 10 minutes before the flight, you lose your ticket. That language is right above in the exact same spot. Let me stop you and ask this. Yes. Do you agree that the conspicuous notice requirement of the regulation applies to this contract? No. And I think that's the other place we need. That's where we get to the question of preemption. Because you were just saying it's conspicuous, weren't you? He's complaining that this thing shouldn't apply to him. And the only reason I point to it is to say, they actually say that the 10-minute rule is adequately stated there. That's in the same font, two lines above, the language he doesn't like. And he thinks that it's confusing. I don't know how there's any reasonable way to say, you have to use these funds by the expiration date. It's confusing. It's not. That's very clear. And the expiration date is stated on the ticket. And as the Court has already observed, the same thing appears very clearly on more of the documents they rely on, where it says up to 12 months and then explains that it has to be used by the expiration date of the ticket or 12 months, whichever is first. The problem we have here — yes. Would you respond to Mr. Fredman's — the last argument he made, which is that I believe this is it, that the references to the regulation in the Contract of Courage amount to incorporating, right, the regulations into the Contract of Courage. Yes. Isn't that his argument? It is his argument. And Judge Gilliam completely rejected that. And I think the place to start there is the case he said was his best case for that, which is Kleiner. It is a case involving Southwest Airlines. But the language in Kleiner is materially different from the language here. He wants to sort of push that to the side. In Kleiner, the contractual language specifically said that the regulations would be binding on Southwest and on the passenger. That is not the language we have here. That language does not appear here. It's been taken out. And so Kleiner doesn't have any application here. I think the cases you ought to look at are the same cases that Judge Gilliam cited, which are the Ono case, the McConnell case. I apologize. I've got the other one in my notes. But there are three of them that all have rejected. I'm sorry, McMullen. So we have Ono, McMullen, Polonofsky. All three of those cases looked at contracts of carriage that had similar language that said that the contracts were subject to other regulations. And the Court said, no, that does not incorporate all of those regulations into the contract. I'd also point the Court to Judge Selya's opinion in the Buck case, which we have cited for a number of things. But one of the things that Judge Selya noted in that case is that if we were to decide that all of these regulations were incorporated by this kind of language, then it would incorporate an entire mine run of regulations into parties' contracts and then make them enforceable by private right of action, which they're not supposed to be able to do. Judge Gilliam particularly pointed that out. He said the contract of carriage, this is on ER 3. Does it matter that these are not state-imposed regulations? I mean, no. And here's why. The issue, and this is where we play into, where preemption and the lack of a private right of action play together. And that's important. They cannot seek to enforce this regulation on us because they're under federal law because there's no private right of action. They can't sue claiming that Southwest breached these regulations. So what they have to do is say that you should, through this state law contract claim, allow us to make a claim that we can't make under federal law. So it's, what they're trying to do is use a state law mechanism to get a remedy that's denied to them by federal law because there is no private right of action. Because here, the plaintiffs are seeking to enforce federally imposed obligations, not state-imposed obligations. But that obligation, they can't enforce it under federal law because it's not, there's no private right of action for it. So they're trying to take that. This is, and again, I'd point the Court to the Buck case. Judge Selya does an excellent job of explaining why this theory just doesn't work. But what they're trying to do is take a federal regulation for which there is no private right of action. So when, so there's references to subject to federal laws and regulations throughout, what does that mean? It's a savings provision, I think is the best way to read it. A what? Savings provision that to the extent these regulations change at some point. For example, regulations, this is a whole panoply of regulations that apply to airlines. The Air Carrier Access Act, other things, that to the extent those regulations change, then the airline has to follow those regulations even if their contract is different. But they don't say that we're incorporating all of these things and promising and sort of agreeing to undertake all of them as a self-imposed obligation. Which gets us to the Wolins case and the other cases from the US Supreme Court about preemption. That the only things that can be enforced against an airline are self-imposed obligations. And they're trying to take all these regulations and import them into the contract. And that's just not, and again, the cases I've cited, Ono, McMullen, Polonofsky, all reject the idea that simply saying that these things are subject to these federal regulations somehow incorporates them in and makes them self-imposed obligations. They're always subject to those provisions. The fact that they state it doesn't mean that they're undertaking those obligations. And again, the Buck case very clearly explains why that should not be the result and why the plaintiff should not be able to use this state law contract claim to get around the fact that there is no private right of action under these regulations. And that's a key thing here, is it's very clear and there's no dispute among the parties that they don't have the right to come into court and sue on the basis of Southwest failed to comply with these regulations. What they're trying to do is use those regulations to change the contract. And there's a reason that Mr. Fredman cannot point you to the contract section that was breached, because it doesn't exist. The contract he wants to enforce is one that doesn't exist. He keeps talking about the reusable funds agreement. It's in all caps in their brief. He talked about it here this morning. There's no such document called the reusable funds agreement. There's no such agreement. There's no such provision of agreement. That is simply their creation. It's a term the plaintiffs created to support this cherry picking that they've done of some of the parts of the contract of carriage, some of the parts of the ticket and other things that they say to cobble together this agreement that they claim says that Southwest has promised that you can always use your travel funds for 12 months, and then everything else is an exception. Well, that's just not how the language is put together. It's not how the contract of carriage is put together, and it's not how the ticket is put together. I will confess that I'm struggling with this case. I do think that the process of reasoning that we're asked to employ is somewhat convoluted. And so it might be helpful to me if we could step back and take what might be thought of as a look at the big picture. The Supreme Court tells us that the courts have a role here in that people like our plaintiff, Ms. Schramm, can sue in court carriers like Southwest for breach of contract. And we're told that a contractual obligation is enforceable  by the court if it was assumed by the carrier voluntarily, if it is a self-imposed obligation. How do you define the phrase self-imposed obligation in this context? It's something that has to be in the contract of carriage, something we've agreed to do. In fact, one of the cases I think I'd point the court to on that is one that the plaintiffs rely on. Hickox-Hoffman is a case where they were talking about baggage fees. And in Hickox-Hoffman, the airline had said, we'll charge you this baggage fee. And then they'd also made a promise to deliver the bag on time. And the court looked at that and said, that's a self-imposed obligation. They didn't have to promise to deliver the bag on time. Let's suppose in this case, the reference to regulations is interpreted as Ms. Schrem would like it. And we consult the agency guidance and we see the agency telling us that the requirement of clear notice displaces ordinary rules of contract construction. Why shouldn't we find that guidance to be helpful? And if the regulations are incorporated into this agreement, find that Southwest assumed the obligation to provide clear notice. I think I'd start with the fact that if you were to interpret the statement subject to that broadly, then you would have the effect, and be the first court, I think, to do so, of incorporating the entire mine run of federal regulations into every contract of carriage. Isn't there a reasoned argument that we can insist on clear notice with regard to forfeitures of funds without running the risk that you described? Well, I think the only way you get there is by saying subject to, we have now voluntarily undertaken these regulations. If the regulations aren't incorporated into the contract, then we don't get to the second part of the question. And the only way to do that is to say that subject to incorporates all of these regulations into the contract and therefore makes all of those regulations subject to a private right of action, which I think gets to the other problem. And I would generally point the court to the Buck case. Judge Selly's opinion on this, it is a complicated analysis. I understand that. I understand where you're coming from. But he lays it out very clearly, that you cannot do what the plaintiffs want to do here because it is a complete end run around the idea that there is no private right of action for these regulations. The second answer, though, I'd have for you, Your Honor, on that is, even if you want to do that, for the reasons that were talked about at the beginning with Mr. Fredman, it's clear here what's going on. The documents that the plaintiffs were given have an expiration date right up top. Expiration date is not an unclear idea, right? These funds, these tickets have to be used by this date or they expire. They go away. It's not a forfeiture. That's the date. And so are you saying that even if the clear warning requirement is part of this agreement, clear warning was given? Yes. Okay. Yeah. And I think you can get there on that as well, just by looking at the documents they attach to their complaint. And so if this was just a pure contract dispute, not trying to incorporate the regs, saying this was unclear, what's the outcome? Selfless win. If it's a pure contract dispute. I mean, the contract of carriage. That's allowed to bring a pure contract dispute. Yes. The contract of carriage, which they don't want to use because it's so much against them, is clear that they can't win. There's no breach of this contract. In fact, they say in their brief that they agree that there are terms in the contract of carriage. And I'd point the court, this is supplemental ER 22, has the exact language in it. They like part two. This is 4C3. They like part two because it talks about it being used for up to a year. But what they don't like is the first part of it that says, unless otherwise stated by the carrier, it can be used for up to 12 months. And then part three and part four are the parts they don't like. And these are the parts they say are not part of their reusable funds agreement that they've created out of thin air. Because they specifically say you have until the earlier of the expiration date. And it explains how that's calculated, that if you use funds with an earlier expiration date, that carries over. Even if we were to read, I guess my question is, even if we were to read the regulations into the contract, which is what they're asking, what you say there's really no basis for it because it's the end run around the private right of action. Would we not consult that document right there, the carriage? I think you would, yes. I think their complaint is that if you read the regulations in, you have to look at the ticket and decide whether it's clear enough that things are incorporated. But I think it's clear that it is. As the court's already observed this morning on the ticket, it says so. And the other thing I'd point the court to is attached to the first  a ticket. And he specifically notes that you have to click purchase. It says you're doing this subject to the terms and conditions. And there's a link right there. So again, I think even if you want to look at what they've attached, it's clear. But I don't think the court has to get to that point because what they're trying to do is avoid preemption and the private right of action and enforce something that the Supreme Court and Congress have said they cannot enforce. Therefore, we'd ask the court to affirm. Thank you. A couple points. One, the contract of carriage isn't the whole contract. It can't be. It doesn't have the price. It doesn't have the time. It doesn't have, it's, the contract of carriage is a separate document that's over there. It's the back page of the, it's the, it's, it's the governing document But it's not the, the terms, it's not the terms of the contract. It's not the, it's not the primary terms. The primary terms are the ticket and the things that Southwest tells people before they buy the ticket. And then it says, which it doesn't even say, but ostensibly says and by agreeing to purchase the ticket and agreeing to, in addition to this deal that we've just made, I give you, you give me money, I give you a ticket. In addition to this deal, you're agreeing to everything in the contract of carriage. So the contract of carriage cannot possibly ever, under any construction, be the entire contract. You have to go online to get the contract. You have to look at the communications between the parties to establish the essential terms of the contract. Under Southwest's construction of this, they can put whatever they want in the contract of carriage. They can reverse everything that's on the ticket itself, on the agreed terms of the ticket, because the ticket itself doesn't matter. And, and there's always rules about what you can incorporate by reference. If you get, don't use the ADA rules about incorporation by reference, then you have to use common law rules or state law rules. And there's the case of Wynn versus Barnes and Nobles, which is also about incorporation by reference. When you incorporate the terms and conditions associated with a website into your agreement with the website, that's an example of incorporation by reference. And what Wynn says is the onus must be on the website owners to put the users on notice of the terms to which they wish to bind consumers. And that's where you get back to this. They put up a big fare chart that says one thing. They put a tiny footnote on the bottom of the chart that limits it materially. They put, which informs you of an expiration date, so you have to find that footnote. Then you get the ticket. The ticket itself does have an expiration date, but unless you read that footnote, you don't know what that expiration date means. Nothing on the ticket notifies you of the forfeiture. And then you actually, so you literally have to read the contract of carriage to put it all together, which is obviously impossible. And that's why there's this conspicuous notice requirement. And you say that whether conspicuous notice was given is a question of fact? Yes. What about the reference to the 10-minute rule? Well, it's, I'm not arguing for or against the 10-minute rule. That's not our case. But it does say if you do not cancel within 10 minutes, your funds will be forfeited. That's an example of, and at least an attempt at conspicuous notice. There's no comparable language with respect to this reusable funds agreement. So the location and the size of the font with regard to the 10-minute rule doesn't mean. I think it does matter, but it's harder to argue. At least there is a full disclosure of a forfeiture. But yeah, there's location and size of the font matters a lot. When we cite that as a counterexample, they are certainly trying to comply with the rule there. They're certainly trying to put 10-minute people on conspicuous notice of the forfeiture. Whether it's adequate, that's not my case. But that's an example of something that might be conspicuous written notice of a forfeiture, which most definitely is not the case with respect to our problem. What about the company's argument that if we were to go along with you, we would open the door to all kinds of problems because the airline would then face litigation based on every regulation under the sun? You heard that argument. Yes, I don't. The idea would be that since they agreed to the Geneva Convention or something as one of all of the applicable regulations that a plaintiff could come and sue them for violating the Geneva Convention. I just don't buy it. It says in the event of a conflict between the contract of carriage and the regulations. It would only be an event of a conflict that that would even come up. But that's a different case anyway. Let's suppose we were concerned about that. Is there a way to carve out your client's claim based on the forfeiture of funds that she experienced from the rest of what were referred to as the mine run of regulations? Yes, because in my client's claim, there's a conflict between the ADA regulations, which were exactly on point, and all the other regulations and laws in the world. So there's this conflict that exists between what Southwest is saying in its contract of carriage and the ADA regulations themselves. Those are the only, that's the only place where there's a conflict to resolve through that saving clause. Thank you. Thank you. Thank you both, Mr. Fredman, Mr. Phillips, for your oral argument presentations here today. The case of Gene Shrem and Marnie Fisher versus Southwest Airlines Company is submitted.
judges: Tashima, Murguia, Chatigny